IDT CORPORATION, Plaintiff,

v.

eGLOBE INC., Christopher Vizas and Donald H. Sledge, Defendants.

No. CIV.A. 00–01158 HHK.

United States District Court, District of Columbia.

March 21, 2001.

Brian T. Scher, Grayson & Kubli, P.C., McLean, VA, for Plaintiff.

Michael John Wilson, Zevnik, Horton, Guibord & McGovern, Washington, DC, Steven Altman, Ziegler, Ziegler & Altman, LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff, IDT Corporation ("IDT") brings this action against defendants, eGlobe Inc., Christopher Vizas, and Donald Sledge (collectively "eGlobe"), alleging violations of federal securities laws as well as several state law claims. This dispute arises out of a warrant agreement, pursuant to which IDT obtained the right to purchase 500,000 shares of eGlobe common stock. IDT exercised this warrant, but eGlobe subsequently refused to remove a restrictive legend that appeared on the stock certificate and did not register the shares for resale. As a result IDT was unable to sell these shares on the open market. Despite requests that eGlobe register the shares for resale and take steps to remove the restrictive legend, such action was not taken, and IDT remained unable to sell the shares.

IDT subsequently filed this action alleging five state law claims and two federal claims, (1) securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, and (2) control person liability under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t. Two motions are currently pending. First, pursuant to Federal Rule of Civil Procedure 12(c), IDT moved for judgement on the pleadings with respect to Count III, breach of the warrant. Second, eGlobe moved to dismiss the federal claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and then to dismiss the remaining claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Upon consideration of the motions, the opposition thereto, and the record of the case, the court concludes that eGlobe's Rule 12(b)(6) motion to dismiss the federal claims should be granted and that eGlobe's Rule 12(b)(1) motion to dismiss the pendant claims should therefore be granted.

## I. BACKGROUND

In February 1998, IDT and Executive Telecard, Ltd. ("EXTEL"), entered into an agreement in which IDT agreed to lend EXTEL $7,500,000. As partial consideration for this loan EXTEL gave IDT a Note (the "Note") in the loan amount and a warrant entitling IDT to purchase up to 500,000 shares of EXTEL's common stock (the "Warrant"). At about this same time IDT and EXTEL entered into a separate agreement, pursuant to which IDT provided carrier telephone service to EXTEL (the "Services Agreement"). In 1999 EXTEL changed its name to eGlobe.

The Warrant provided that stock certificates issued pursuant to the Warrant "shall be appropriately legended to the extent required by federal or state securities laws." Compl. at Ex. 3, ¶ 3. The Warrant further provided that,

> Upon a written request from Holder following exercise of this warrant in whole or in part, EXTEL shall take all reasonable steps necessary to file, as promptly as practicable and in any event within 30 days following EXTEL's receipt of such notice, a registration statement on Form S–3 under the Securities Act ... to register for resale the shares of EXTEL Common Stock issued upon exercise of this Warrant. EXTEL shall take all reasonable steps necessary to cause such registration statement to become effective as promptly as practicable, and shall maintain the effectiveness of such registration statement.

*Id.* ¶ 9. In a letter dated January 11, 2000, IDT informed eGlobe that,

> IDT hereby elects to exercise the Warrant in its entirety.... Furthermore, following the exercise of the Warrant, and in accordance with Section 9.9 of the Warrant, IDT hereby requests that eGlobe take all reasonable steps necessary to file a registration statement on Form S–3 under the Securities Act of 1933, as amended, to register for resale the shares of Common Stock issued upon exercise of the Warrant.

Compl. at Ex. 4. On January 14, 2000, eGlobe issued IDT a stock certificate representing IDT's ownership of 500,000 shares of eGlobe common stock. The stock certificate contained a restrictive legend stating that "[t]he shares represented by this certificate have not been registered under the Securities Act of 1933 ... and may not be sold, transferred or assigned in the absence of an effective registration statement for these shares under the Securities Act of 1933 or an opinion of the Company's counsel that registration is not required under said Act." Compl. ¶ 14. On February 7, 2000, IDT requested that eGlobe's legal counsel issue a legal opinion instructing eGlobe's transfer agent to remove the restrictive legend by February 23, 2000, so that the shares would be freely transferable. IDT alleges that in a contemporaneous telephone conversation eGlobe's counsel agreed to this request, and assured IDT's general counsel that the requested legal opinion would be issued. However, this did not happen. eGlobe admits that during February 2000, the shares were not registered and eGlobe did not instruct the transfer agent to remove the legend. Answer ¶ 16, 18.

During this period in which the shares were not registered for resale and the restrictive legend was not removed, IDT alleges that various officers, directors, and major shareholders of eGlobe, sold significant amounts of eGlobe common stock for their own personal benefit. IDT further alleges that defendant Christopher Vargas, President, CEO, and a director of eGlobe, and defendant Donald Sledge, a director of eGlobe, caused eGlobe to prevent IDT from selling the shares it obtained when it exercised the Warrant. By preventing IDT from selling its shares, these defendants benefitted personally by concurrently selling their own shares throughout February 2000. IDT maintains that these actions constituted a fraudulent scheme within the meaning of Section 10(b) and Rule 10b–5.

As a result of its inability to sell the eGlobe common stock during February 2000, IDT asserts that it suffered damages of not less than $5,594,000. Furthermore, IDT also alleges that eGlobe has not paid $27,734 and $270,261 due under the Note and the Services Agreement respectively. In addition to these losses, IDT also requests that it be awarded attorney's fees, interest, and costs.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6) eGlobe moved to dismiss IDT's federal securities law claims for failure to state a claim upon which relief can be granted. A court reviewing a motion to dismiss for failure to state a claim upon which relief may be granted must accept as true the allegations in the plaintiff's pleadings, and view them in a light most favorable to the plaintiff. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). A Rule 12(b)(6) motion to dismiss should be granted only when it is clear that the plaintiff can prove no set of facts which would entitle her to relief under her claims. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

## A. Section 10(b) and Rule 10b–5

IDT alleges in its fourth claim that eGlobe failed to register for resale the 500,000 shares of stock, and failed to allow the restrictive legend to be removed. During this same time frame, various officers of eGlobe profited from their personal sales of eGlobe stock during favorable market conditions. According to IDT, this conduct was in violation of Section 10(b) and Rule 10b–5.

Section 10(b) provides that

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Courts have held that to state a claim under Section 10(b) a plaintiff must allege:

(1) a material misstatement or omission,

(2) made with scienter (an intent to deceive),

(3) made in connection with the purchase or sale of a security,

(4) furthered by the use of the mails or a national securities exchange, and

(5) upon which plaintiff detrimentally relied.

See 15 U.S.C. § 78j; *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). Under Federal Rule of Civil Procedure 9(b) a plaintiff must plead securities fraud with particularity. *See*

Fed.R.Civ.P. 9(b) (allegations of fraud must be stated with particularity); *see also Kowal*, 16 F.3d at 1277–79 (holding that Rule 10b–5 claim must be stated with particularity). Additionally, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 737 (codified in scattered sections of 15 U.S.C.), imposed further requirements for pleading securities fraud. The PSLRA requires that a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u4(b)(2). The PSLRA also mandates that a complaint alleging securities fraud "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1); *see also Novak v. Kasaks*, 216 F.3d 300 (2d Cir.), *cert. denied*, — U.S. ——, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000) (for a detailed discussion of pre- and post-PSLRA pleading standards).

eGlobe attacks IDT's fourth cause of action primarily on the ground that it fails to allege fraud in connection with the purchase or sale of securities. eGlobe maintains that while its actions allegedly prevented IDT from selling the 500,000 shares obtained through the exercise of the Warrant, such conduct was not in connection with the purchase or sale of securities. IDT responds that the alleged fraud was in connection with the exercise of the Warrant itself, and therefore in connection with the purchase and sale of securities. The complaint, however, does not support IDT's position. There are no allegations of fraud in connection with the exercise of the Warrant, only allegations that eGlobe failed to perform its obligations after the Warrant was exercised.

■ "The terms 'buy' and 'purchase' each include any contract to buy, purchase,

or otherwise acquire.... The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of." 15 U.S.C. § 78c(a)(13), (a)(14). The Supreme Court has defined the scope of the "in connection with the purchase or sale" element of Section 10(b) actions. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737–39, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Court made clear that plaintiffs in Section 10(b) actions must be actual purchasers or sellers of securities. Accordingly, three primary groups cannot maintain such claims. First, potential purchasers who were fraudulently induced not to buy. Second, actual shareholders who are fraudulently induced not to sell. Third, shareholders whose investment value is diminished by fraudulent activity. *Id.* at 737–39, 95 S.Ct. 1917 (citing *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d. Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952)); *see also Sacks v. Reynolds Securities, Inc.*, 593 F.2d 1234, 1241 (D.C.Cir.1978) ("As we previously have explained, *Blue Chip Stamps* does not permit recovery under Rule 10b–5 when alleged fraud causes an investor to retain ownership of securities.").[1]

▇ Here, IDT essentially falls into the third category of plaintiffs eliminated under *Blue Chip Stamps*. It is undisputed that IDT purchased shares of eGlobe, the

key question, however, is whether the alleged fraud occurred in connection with that purchase. IDT exercised its option to purchase 500,000 unregistered shares of eGlobe common stock. The value of this investment then decreased when eGlobe allegedly failed to fulfill its obligation to register the shares for resale, and the market price of the shares dropped before IDT was able to sell. IDT has not alleged any fraud in connection with the execution and exercise of the Warrant. Rather, when read in a light most favorable to IDT, the complaint alleges that after IDT exercised its purchase rights under the Warrant, eGlobe then failed to comply with the registration provision contained in paragraph nine of the Warrant.

The complaint alleges the following facts. The Warrant was signed in February 1998. On January 11, 2000, IDT informed eGlobe that it wished to exercise the warrant. Thereafter, on January 14, 2000, IDT received a stock certificate for 500,000 shares of eGlobe stock. The Warrant specifies quite clearly that it pertains to shares that "have not been registered under the Securities Act of 1933 ... and cannot be resold unless subsequently registered." Compl. at Ex. 3. Precisely in keeping with this caveat, the shares eGlobe received on January 14, were unregistered.[2] Although IDT requested that

---

1. IDT seeks support in the proposition that Section 10(b) should be read "flexibly, not technically and restrictively." *See Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). While this is an accurate statement, even a flexible interpretation is not sufficient to sustain IDT's claims. *See SEC v. Zandford*, 238 F.3d 559, 563 (4th Cir.2001) ("While the in connection with requirement must be flexible, it is not so elastic as to cover incidents which bear no relationship to market integrity or investor understanding. In particular, it is clear that ordinary state law fraud or conversion claims do not invariably violate the federal securities laws."); *Chemical Bank v. Ar-*

*thur Andersen & Co.*, 726 F.2d 930, 942–43 (2d Cir.1984) (holding that the in connection with requirement must be "fleshed out by a cautious case-by-case approach").

2. Although IDT alleges that "[d]efendants fraudulently delivered worthless shares," the facts do not substantiate this conclusion. Pl.'s Opp'n at 5. IDT received exactly what the Warrant represented, 500,000 unregistered shares. The fact that the value of these shares was then reduced by eGlobe's subsequent failure to register them, does not convert this claim from a breach of contract claim into a federal securities law claim.

eGlobe register the shares, it is undisputed that the shares were never registered. In late January, however, eGlobe assured IDT that the shares would be registered shortly. Then, during February 2000, when IDT was prevented from selling its shares, defendants sold their personal holdings for a profit. *See* Pl.'s Reply at 10–11.

What the complaint does not allege, however, is that the representations in the Warrant were fraudulent at the time it was signed. *See Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir.2000) (holding that "[t]he failure to carry out a promise made in connection with a securities transaction" is not fraud within the meaning of Rule 10b–5 "unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform"); *Luce v. Edelstein*, 802 F.2d 49, 55–56 (2d Cir.1986) (holding that contractual promises made in connection with the purchase of securities may violate Section 10(b) if "those representations involved specific promises ... to perform particular acts that [defendants] did not intend to carry out or knew could not be carried out.").[3] IDT has not alleged that it was fraudulently induced to sign the Warrant or that eGlobe did not intend to register the securities when the Warrant was signed in 1998. Furthermore, to the extent that such fraud might be inferred from the complaint, it is certainly not stated with the particularity required of either Federal Rule of Civil Procedure 9(b) or the PSLRA.

The complaint only alleges that after IDT exercised the warrant eGlobe did not fully perform. Indeed, the fraudulent scheme alleged by IDT is dependant on the favorable market conditions that existed in February 2000. eGlobe could not have known in advance when IDT would exercise the option, or what the market conditions would be at that time. The allegations in the complaint may very well constitute a breach of paragraph nine of the Warrant, and perhaps common law fraud, but do not establish fraud in connection with the purchase or sale of securities as required to state a claim under Section 10(b).

Furthermore, IDT cites no persuasive legal authority in support of its position. It relies primarily on *Foster v. Financial Technology Inc.*, 517 F.2d 1068 (9th Cir. 1975). This case fails to support IDT's argument. The facts are easily distinguishable, and the holding irrelevant. *Foster* primarily involved a situation in which it was undisputed that the defendants sold unregistered stock in violation of federal registration provisions, but the complaint also alleged that the defendants made false representations which induced the plaintiffs to enter into the agreement. Neither of these elements exists in the present case. The 1998 Warrant specially pertained to unregistered shares, and there are no allegations that IDT was fraudulently induced to sign or exercise it. IDT also cites *Mullen v. Sweetwater Development Corp.*, 619 F.Supp. 809 (D.Colo. 1985). This case is equally unpersuasive.

---

**3.** Even *Devonbrook, Inc. v. Lilly Lynn, Inc.*, No. 70 Civ. 4687, 1977 U.S. Dist Lexis 18006, at *8 n. 2 (S.D.N.Y. Jan. 10, 1977), one of the cases relied upon by IDT, recognized that "[w]here representations are made and such representations are promissory in nature, as here, the promisee may not recover unless there is proof that at the time the promises were made the promissor had no intention of keeping them. The lack of intention to perform is what constitutes the fraud." Quoting *Keers & Co. v. American Steel & Pump Corp.*, 234 F.Supp. 201, 203 (S.D.N.Y.1964). The court in *Devonbrook* then dismissed the case because the plaintiff had not demonstrated that the defendant did not intend to register the stock at the time the agreement was made.

In *Mullen* the plaintiffs were allowed to pursue a Rule 10b–5 claim based on a contract to purchase stock, even though they never actually purchased the stock. To whatever extent *Mullen* may be good law, it is immaterial. Here there is no dispute that IDT actually purchased 500,-000 shares of stock, however the alleged fraud did not occur in connection with that purchase. Therefore, eGlobe's motion to dismiss IDT's fourth cause of action for failure to state a claim is granted.

### B. Section 20(a)

■ IDT's fifth cause of action alleges a violation of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). This section provides that,

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.

15 U.S.C. § 78t(a). By the express terms of this provision it applies only to those in control of "any person liable" for securities fraud under another provision or rule. Thus in order to maintain a claim for a violation Section 20(a), a plaintiff must establish an underlying violation of a different section. *See In re The Baan Co. Securities Litigation*, 103 F.Supp.2d 1, 23 (D.D.C.2000) ("[C]ontrol person liability under 20(a) is contingent upon showing direct 10(b) liability of the controlled entity."); *High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420, 428 (S.D.N.Y.1998) ("[B]ecause plaintiffs have not properly pled any primary violation of federal securities laws, their derivative claim for 'controlling person' liability pursuant to § 20(a) must be dismissed.").

Accordingly, because the court has dismissed the cause of action alleging a violation of Section 10(b), IDT cannot proceed on its derivative claim under Section 20(a). eGlobe's motion to dismiss IDT's fifth cause of action is therefore granted.

### C. Jurisdiction Over the Remaining Claims

■ The complaint states that pursuant to 28 U.S.C. § 1367 this court has supplemental jurisdiction over the remaining five claims. It should be noted that IDT does not allege that the court has diversity jurisdiction, as it admits that both IDT and eGlobe are incorporated in Delaware. Because corporations are considered citizens of the state in which they are incorporated, complete diversity does not exist. *See generally Carden v. Arkoma Associates,* 494 U.S. 185, 188, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (" '[T]hose who use the corporate name, and exercise the faculties conferred by it,' should be presumed conclusively to be citizens of the corporation's State of incorporation."). Therefore, as IDT's only two claims based upon federal law have been dismissed, there is no reason for this court to retain jurisdiction over the pendent claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, eGlobe's motion to dismiss the remaining claims for lack of subject matter jurisdiction is granted.

### III. CONCLUSION

For the foregoing reasons, eGlobe's motion to dismiss the federal claims for failure to state a claim and to dismiss the remaining claims for lack of subject matter jurisdiction is granted. An appropriate order accompanies this memorandum.

### JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memo-

randum opinion docketed this same day, it is this—day of March, 2001, hereby

**ORDERED** and **ADJUDGED** that defendants' motion to dismiss is granted; and it is further

**ORDERED** and **ADJUDGED** that the complaint in this case is **DISMISSED**.